IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ZACHARY W. CAPPS, an individual, )
and ASPEN VALLEY HOLDINGS, LLC, )
an Oklahoma limited liability company, )
)
        Plaintiffs, )
)
v. ) Case No. 18-CV-162-GKF-FHM
)
BULLION EXHANGE, LLC, a Delaware )
limited liability company, and JOHN DOES, )
)
        Defendants. )

## OPINION AND ORDER

Before the court is the Motion to Dismiss [Doc. No. 13] of defendant Bullion Exchange, LLC. Bullion seeks dismissal pursuant to FED. R. CIV. P. 12(b)(2) due to lack of personal jurisdiction. Alternatively, Bullion seeks dismissal of plaintiffs' defamation claim (count II of the Complaint) based on the statute of limitations.

**I.    Allegations of the Complaint**

This dispute concerns alleged defamatory statements made in online posts directed at plaintiff Zachary Capps by John Doe employees of Bullion Exchange, LLC. [Doc. No. 2, ¶ 4]. Capps, who resides in Tulsa County, Oklahoma, is the owner and sole member of Aspen Valley Holdings, LLC. [*Id.* ¶¶ 1 and 9-10]. Aspen Valley is an Oklahoma limited liability company with its principal place of business in Tulsa, Oklahoma. [*Id.* ¶ 2]. It owns over forty rental properties in Oklahoma and Colorado and engages in the construction, ownership, and sale of new-builds and remodels. [*Id.* ¶ 10].

Defendant Bullion Exchange, LLC is a Delaware limited liability company with its principal place of business in New York. [*Id.* ¶ 3]. On or about August 4, 2016, Capps placed an

order with Bullion for the purchase of thirty-five, one ounce American Eagle gold coins for $50,562.40. Bullion confirmed Capps' order, charged his credit card, and provided him with a tracking number for the shipment. [*Id.* ¶ 12]. The order arrived several days later in multiple boxes, some of which were unmarked, and Capps believed that part of his order had not arrived. As a result, Capps made numerous phone calls to Bullion in order to resolve the issue. [*Id.* ¶ 13]. The matter was resolved over the next few days. [*Id.* ¶ 14].

In late 2017, an Aspen Valley employee notified Capps of a salacious online post concerning Capps and Aspen Valley that was published on the website BadBuyerList.org. BadBuyerList.org is website fully accessible throughout the United States, including to residents of Oklahoma and Colorado, and is a database for online sellers who have encountered problematic buyers and want to share their experiences with other sellers. [*Id.* ¶ 16]. Sellers are able to search the database in an effort to avoid frauds or potentially bad buyers. However, other online users are also able to access the post without navigating to BadBuyerList.org by using a Google search of "Zachary Capps." [*Id.* ¶ 16]. The employee who notified Capps of the post discovered the post through conversations with Aspen Valley tenants and customers. [*Id.* ¶ 15].

The post stated "DO NOT CONDUCT BUSINESS WITH THIS FRAUDSTER. HE SHOULD BE PUT IN JAIL!!!" and "[h]e [Capps] claims to run Aspen Holding Valley LLC. Do not take financial advise [sic] from this crook." [*Id.* ¶¶ 18-19] (emphasis in original). Further, the post stated "Zachary Capps is a complete fraud and then went ahead and filed a charge back with his credit card stating that the package did in fact get delivered to him but it came empty (complete lie from his original story." [*Id.* 18(b)]. The post also stated "[h]is [sic] is also a registered sex offender and clearly still committing various different scams and crimes." [*Id.* ¶ 18(d)]. Capps' criminal record is publicly available on the Oklahoma Supreme Court Network (OSCN.net), and

a search of that record would show that Capps has never been charged or convicted in Oklahoma of any crime relating to credit card fraud, financial fraud, or sex offenses. [*Id.* ¶ 30]. Finally, the post included Capps's personal information, including his email address, phone number, home address, and IP address. [*Id.* ¶ 20].

Capps alleges that his upstanding reputation in the Tulsa community and real estate industry is responsible for his success. [*Id.* ¶ 11]. Since the statements were published, Capps and Aspen Valley have experienced significant vacancies in their rental properties, have been unable to sell construction bids, and have been passed over on construction bids. [*Id.* ¶ 21].

## II. Personal Jurisdiction Analysis

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999)). "Where, as in Oklahoma, the state long arm statute supports personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). "Analyzing due process is a two-step process. First, the court must find that the defendant has 'minimum contacts' with the forum state such that the defendant should reasonably anticipate being haled into court there." *Dig. Ally, Inc., v. Util. Assocs., Inc.*, No. 14-2262-CM, 2014 WL 7375530, at *2 (D. Kan. Dec. 29, 2014) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1160 (10th Cir. 2010)). Second, the defendant's contacts must be "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Miliken v. Meyer,* 311 U.S. 457, 463 (1940)).

"Such contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities." *Shrader*, 633 F.3d at 1239.

The plaintiff bears the burden of establishing personal jurisdiction when it is contested. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1069 (10th Cir. 2008). "[A]t this stage, plaintiffs need only make a *prima facie* showing of personal jurisdiction." *Id.* at 1070. The court accepts as true any uncontroverted allegations in the complaint and resolves all factual disputes in plaintiff's favor. *Id.*

    *A.    Minimum Contacts*

Because neither plaintiffs nor Bullion allege that general jurisdiction exists over Bullion, the court limits its discussion to specific jurisdiction. In cases involving intentional torts, the minimum contacts standard for specific jurisdiction requires plaintiff to establish that defendant (1) "purposefully directed" its activities at residents of the forum state and (2) the litigation resulted from alleged injuries that "arise out of" those activities. *Dudnikov,* 514 F.3d at 1071. In *Dudnikov*, the Tenth Circuit "distill[ed] *Calder* to its essence," concluding that the purposefully directed element of the minimum contacts standard requires plaintiff to show that defendant (1) performed an intentional action, (2) that was expressly aimed at the forum state, (3) with knowledge that the brunt of the injury would be felt in the forum state. *Id.* at 1072. Thus, "it is the defendant's conduct that must form the necessary connection with the forum state," and "plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

In *Shrader*, the Tenth Circuit adapted this personal jurisdiction analysis to cases arising out of internet activity. *Shrader*, 633 F.3d at 1240. The court recognized a concern expressed by the Fourth Circuit that a liberal application of pre-internet personal jurisdiction standards would subject anyone who posted online to personal jurisdiction in every state. *Id.* at 1240 (citing *ALS*

*Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)). To avoid this result, *Shrader* "plac[ed] emphasis on the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there." *Shrader*, 633 F.3d at 1240 (emphasis in original). Thus, without more, simply posting content on the internet is not enough for a court to extend personal jurisdiction wherever the post may be read. *Id.* at 1241.

1. Purposefully Directed

To determine the "purposefully directed" element of minimum contacts, the court will consider whether Bullion (1) performed an intentional action, (2) expressly aimed at the Oklahoma, (3) with knowledge that the brunt of the injury would be felt in Oklahoma.

a. Intentional Act

In establishing the intentional act requirement for the purposefully directed test, the Tenth Circuit noted that the defendants in *Calder* intentionally wrote and published a defamatory article. *Dudnikov,* 514 F.3d at 1072. Similar to the defendants in *Calder*, plaintiffs allege that John Doe Bullion employees intentionally published false statements against him. [Doc. No. 2, ¶¶ 17-20]. Thus, plaintiffs satisfy the intentional act requirement.

b. Expressly Aimed

To determine if conduct was expressly aimed at the forum state, courts must consider whether a state is the "focal point" of a defendant's tortious conduct. *Calder*, 465 U.S. at 789. In cases involving online defamation, a statement's content and audience can be considered to determine a statement's focal point. *Shrader*, 633 F.3d at 1245. However, posting defamatory comments on an internet site does not, "without more," subject the poster to personal jurisdiction anywhere the statement is accessible. *Id.* at 1241. "In considering what 'more' could create personal jurisdiction for such activities, courts look to indications that a defendant deliberately

directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id.*

Bullion argues that it should not be subject to personal jurisdiction in Oklahoma because its conduct was not expressly aimed at Oklahoma. In response, plaintiffs contend that Bullion's statements were expressly aimed at Oklahoma because Bullion made the alleged defamatory statements knowing that they would negatively affect Capps and his business in Oklahoma.

The court concludes this case is factually similar to *Silver v. Brown*, 382 F. App'x 723 (10th Cir. 2010).[1] In *Silver*, David Silver was the president of Santa Fe Capital ("Santa Fe"), and Matthew Brown was the chief executive officer of Growth Technologies International ("GTI"). *Id.* at 724. After a failed business deal between Santa Fe and GTI, Brown created a blog with the domain name "DavidSilverSantaFe.com," which included defamatory messages about Silver and Santa Fe. *Id.* at 725. The Tenth Circuit concluded that both the content and audience of the blog were focused on New Mexico and therefore expressly aimed at the forum state. *Id.* at 729-30. The court found it relevant that the blog was about a resident and company from New Mexico, complained about a failed business deal that occurred mainly in New Mexico, and was widely available in New Mexico. *Id.* These facts are analogous to those alleged by Capps.

Like the blog in *Silver*, which was about a New Mexico resident and company, the post by Bullion was about Capps, a resident of Oklahoma, and Aspen Valley, a company with its principal place of business in Oklahoma. [Doc. No. 2, ¶¶ 1 and 2]. Additionally, the blog in *Silver* complained about a failed business deal that occurred mainly in New Mexico, and Bullion's post on BadBuyerList.org complained about a disputed purchase made by Capps in Oklahoma. [*Id.* ¶

---

[1] "Unpublished decisions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1.

18(b)]. Just as the blog in *Silver* was accessible widely in New Mexico, the Complaint alleges that Aspen Valley customers and employees read the posts. [*Id.* ¶ 24]. Because the Complaint alleges that Aspen Valley's principal place of business is in Oklahoma, the company owns real property in Oklahoma and Colorado, and engages in construction and remodel work in Oklahoma, the court may reasonably infer that the post was read by Aspen Valley customers and employees in Oklahoma. *See* [*id*. ¶¶ 9-11].

Bullion contends that the intended audience of its post was other online-sellers; however, the Complaint alleges sufficient facts from which the court may reasonably infer that Oklahoma residents were its intended audience. Plaintiffs allege that Capps is a prominent, self-made businessman in Oklahoma, and that Aspen Valley owns over forty rental properties in Oklahoma and Colorado and engages in the construction, ownership, and sale of new-builds and remodels in Oklahoma. [*Id.* ¶¶ 9-10]. The real estate business is specific to Oklahoma and plaintiffs further allege that Capps's success in the industry is attributable to his "upstanding reputation in the Tulsa Community and real estate industry." [*Id.* ¶ 11]. Plaintiffs also allege that Bullion posted that "Capps is a fraudster," "do not conduct business with this fraudster," and "[h]e [Capps] claims to run Aspen Holding Valley LLC. Do not take financial advise [sic] from this crook." [*Id.* ¶¶ 18-19]. Finally, the Complaint includes allegations from which the court may reasonably infer that Bullion and its employees knew Capps resided in Oklahoma, as plaintiffs allege that the post included Capps's home address. [*Id.* ¶ 20]. Thus, the allegations of the Complaint are not geographically neutral, but, instead, include allegations from which the court may reasonably infer that an intended audience of Bullion's post was persons who may potentially do business with Capps or Aspen Valley in Oklahoma.

However, Bullion argues that the alleged defamatory statements were not expressly aimed at Oklahoma because they were posted on a website that is fully accessible throughout the United States; however, posting statements on a website that is nationally accessible does not necessarily insulate a non-resident defendant from personal jurisdiction in another state. *Silver*, 382 F. App'x at 730. Rather, courts extend personal jurisdiction in cases where a defendant "deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Shrader*, 633 F.3d at 1241. As discussed above, taking the allegations of the Complaint as true, the court may reasonably infer that Bullion knew Capps resided and conducted business in Oklahoma, the posted statements were likely to damage plaintiffs' reputation with customers in Oklahoma, and, therefore, Bullion intended to harm plaintiffs specifically in Oklahoma. Accordingly, the court concludes that the "expressly aimed" requirement is satisfied.

    c.  Brunt of the Injury

The final requirement for determining that Bullion's conduct was purposefully directed at the forum state is that it knew that the brunt of the injury would be felt in the forum state. This requirement "concentrates on the consequences of the defendant's actions—where was the alleged harm actually felt by the plaintiff." *Dudnikov*, 514 F.3d. at 1075. Plaintiffs allege that Bullion knew Capps's home address and that he runs Aspen Valley, a company principally located in Oklahoma. [Doc. No. 2, ¶¶ 19-20]. Combined with the statements in the post dissuading persons from doing business with Capps, the allegations of the Complaint are sufficient for the court to infer that Bullion knew that the plaintiffs would feel the brunt of the injury in Oklahoma.

In sum, the Complaint alleges facts from which the court may reasonably infer that Bullion performed an intentional act and expressly aimed its conduct at Oklahoma with knowledge that

plaintiffs would feel the brunt of the injury in this state. Therefore, the court concludes that the purposefully directed prong of the minimum contacts analysis is satisfied.

    2. <u>"Arise Out Of"</u>

The second prong of the minimum contacts analysis requires consideration of whether the alleged injuries arise out of defendant's contacts with Oklahoma. *Shrader*, 633 F.3d at 1239. Courts are split on the causal standard to apply to this requirement, and the Tenth Circuit has not addressed which approach it endorses. *Silver*, 382 F. App'x at 731 (citing *Dudnikov*, 514 F.3d at 1078). The two approaches considered by the Tenth Circuit are (1) "but-for" causation and (2) proximate cause. *Dudnikov*, 514 F.3d at 1078. However, the court need not take a position because the court is satisfied both approaches are met in this case. *See Silver*, 382 F. App'x at 731 (citing *Tamburo v. Dworkin*, 601 F.3d 693, 709 (7th Cir. 2010)). As discussed above, the Complaint includes allegations from which the court may reasonably infer that Bullion expressly aimed the post at Capps and Aspen Valley for the purpose of causing injury in Oklahoma—specifically, dissuading persons from conducting business with Capps and Aspen Valley. Further, the Complaint alleges that, since the post was published, Capps and Aspen Valley have experienced significant vacancies in rental properties, have been unable to sell construction bids, and have been passed over for construction bids. [Doc. No. 2, ¶ 21]. Thus, these contacts may reasonably be argued to be the cause in fact and the legal cause of the alleged injury, and therefore the "arises out of" requirement is satisfied. *See Silver*, 382 F. App'x at 731.

Because the Complaint contains sufficient allegations to satisfy both the "purposefully directed" and "arises out of" prongs of the minimum contacts analysis, the court concludes that plaintiffs satisfied the burden of establishing a *prima facie* case for the minimum contacts

necessary to exercise specific jurisdiction over Bullion in Oklahoma. Accordingly, the court will next consider notions of fair play and substantial justice.

    B.    *Notions of Fair Play*

The final consideration for the court is "whether the exercise of personal jurisdiction would 'offend traditional notions of fair play and substantial justice.'" *Dudnikov,* 514 F.3d at 1080 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). For this analysis, the burden shifts to the defendant to show that the exercise of personal jurisdiction would be unreasonable. *Id.* The factors considered in determining whether notions of fair play are satisfied are:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states . . . in furthering fundamental social policies.

*Dudnikov*, 514 F.3d at 1080. Although Bullion does not argue that personal jurisdiction would be an unreasonable burden, the court will briefly address these factors.

While Bullion would be burdened by having to travel to Oklahoma, this burden is not "gravely difficult and inconvenient." *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Insofar as Bullion has presented no facts to show a burden, factor one does not weigh against personal jurisdiction. Factors two and three both favor personal jurisdiction. The Complaint alleges that Bullion made false statements about an Oklahoma resident, and Oklahoma has a strong interest in protecting its citizens and resolving disputes. [Doc. No. 2, ¶ 18]. Additionally, plaintiffs' interest in convenient, effectual relief is best served by the exercise of personal jurisdiction over Bullion in Oklahoma.

The fourth factor considers the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1097 (10th Cir. 1998). Oklahoma is the location of both the underlying wrong and the majority of the witnesses because it is where plaintiffs allege Aspen Valley customers and employees read defamatory statements that resulted in injury to Capps's reputation. [Doc. No. 2, ¶ 24]. These facts will also likely result in the application of Oklahoma law. Jurisdiction does not appear necessary to prevent piecemeal litigation. Overall, the components of the fourth factor favor the exercise of personal jurisdiction. Because neither party has identified social policies that would be furthered or hindered by extending personal jurisdiction, the fifth factor does not apply. Because none of the five factors weigh against the exercise of personal jurisdiction, the court concludes that exercising personal jurisdiction over Bullion in Oklahoma would not be unreasonable or offensive to notions of fair play and substantial justice.

Based on the foregoing analysis, this court concludes that plaintiffs alleges sufficient facts to make a *prima facie* case for specific jurisdiction over Bullion in Oklahoma and the exercise of personal jurisdiction over Bullion in Oklahoma does not offend notions of fair play and substantial justice. Therefore, Bullion's motion to dismiss for lack of personal jurisdiction is denied.

### III. Defamation Statute of Limitations Analysis

Bullion moves to dismiss count II of the Complaint, plaintiffs' defamation claim, pursuant to FED. R. CIV. P. 12(b)(6). Bullion argues that defamation claim is barred by the applicable statute of limitations.

A. *Motion to Dismiss Standard*

In considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief can be granted. A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to make out the claim. *Id.* at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

B. *Statute of Limitations*

Oklahoma's limitation of action statute, 12 OKLA. STAT. § 95(4), provides that civil actions for libel or slander can only be brought within one year after the cause of action accrues.[2] "[A] [defamation] action generally accrues on the date of publication." *Dig. Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 839 (Okla. 2001). However, in *Digital Design Group*, the Oklahoma Supreme Court applied the "discovery rule" to defamation claims. *Id.* at 841. "The discovery rule allows the limitation period in certain tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury. *Id.* at 839. The discovery rule

---

[2] Both libel and slander are forms of defamation. *Dig. Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 839 (Okla. 2001).

- 12 -

is properly applied in cases "in which the injury was concealed from the plaintiff or the injury was unlikely to come to the attention of the injured party." *Id.* at 840-41.

Bullion argues that the defamatory statements were published in September 2016, and therefore plaintiffs' March 2018 filing was untimely. Further, Bullion contends that discovery rule is inapplicable to plaintiffs' claim because the defamatory statements were posted on a website accessible throughout the United States by a simple Google search and, therefore, the statements were not likely to be concealed from plaintiffs. *See* [Doc. No. 2, ¶ 16]. In response, plaintiffs point to allegations in the Complaint that, in late 2017, an Aspen Valley employee notified Capps of the online post, and that the employee only discovered the post through conversations with Aspen Valley tenants and customers. [*Id.* ¶ 15].

Under these circumstances, the court cannot determine whether plaintiffs *should have known* of the alleged injury at an earlier date based on the pleadings alone. *See Givens v. Shadow Mountain Behavioral Health Sys.*, No. 09-CV-0430-CVE-FHM, 2009 WL 3756597, at *4 (N.D. Okla. Nov. 5, 2009); *see also Dig. Design Grp.*, 24 P.3d at 842 ("[T]he question of when the plaintiff knew or should have known was a question of fact and a determination for the jury."). Rather, plaintiffs have pled sufficient facts from which the court may reasonably infer that plaintiffs did not become aware of the alleged defamatory posts, and therefore injury, until late 2017. *See* [Doc. No. 2, ¶ 15]. That is sufficient at the motion to dismiss stage, and Bullion's motion to dismiss count II of the Complaint, plaintiffs' defamation claim, is denied. *See State of Oklahoma ex rel. Doak v. Eisneramper, LLP*, No. CIV-16-224-C, 2016 WL 3963211, at *2 (W.D. Okla. July 21, 2016) (where parties dispute the facts that were sufficient to put plaintiff on notice, "the statute of limitations is not amenable to resolution at [the motion to dismiss] stage"); *Radial*

*Engines, Ltd. v. WACO Classic Aircraft Corp.,* No. CIV-16-0456-HE, 2016 WL 5818614, at *6 (W.D. Okla. Oct. 4, 2016).[3]

**IV. Conclusion**

WHEREFORE, Bullion Exchange, LLC's Motion to Dismiss [Doc. No. 13] is denied. Defendant Bullion Exchange, LLC shall file its Answer on or before August 31, 2018.

DATED this 17th day of August, 2018.

GREGORY K. FRIZZELL, CHIEF JUDGE

---

[3] The court is not persuaded by another Western District of Oklahoma decision cited by Bullion, *Dedovic v. Mowen*, in which the court resolved application of the discovery rule at the motion to dismiss stage. *See Dedovic v. Mowen*, No. CIV-06-918-M, 2007 WL 1574055 (W.D. Okla. May 29, 2007). In *Dedovic,* the court reasoned that, because the Complaint alleged that the defamatory book was published and distributed to the general public, the book was "not likely to be concealed from plaintiff and was not published in a secretive manner which would make it unlikely to come to the attention of plaintiff." *Id.* at *1. To adopt a similar analysis in this case, based on solely on allegations in the Complaint that the defamatory post was published on the worldwide web and accessible through search engines, would effectively preclude application of the discovery rule to cases involving online statements or impose a duty to "google" one's self regularly in order to discover potentially defamatory statements. This court declines to adopt such a limited application of the discovery rule absent clear guidance from the Oklahoma Supreme Court.